USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

MAY 3 1 2016

RECEIVED SDNY PRO SE OFFICE
2016 MAY 31 AM 9:44

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ANTHONY BLUE,

           Plaintiff,

    -against-

CITY OF NEW YORK; SGT. JOLT MENA;
DET. ANDRE WILLIAMS; DET. ADAM TEGAN;
DET. ROBERT YARBROUGH; DET. MICHAEL
MORALES; DET. ROBERT DELBUSTO; DET.
DENNY ACOSTA; P.O. STEVEN VAGNINI,
individually, severally and in their
official capacities,

           Defendants.

---

AMENDED COMPLAINT

NO. 14-CV-7836(VSB)

Jury Trial Demanded

TAKE NOTICE, the Plaintiff, ANTHONY BLUE, hereby appears in this action Pro Se, and request that this amended complaint be served upon them, at the address below, in this matter.

Plaintiff, ANTHONY BLUE, complaining of the defendants, The City of New York; Sgt. Jolt Mena; Det. Andre Williams; Det. Adam Tegan; Det. Robert Yarbrough; Det. Michael Morales Det. Robert Delbusto; Det. Denny Acosta; P.O. Steven Vagnini, collectively referred to as the Defendants, upon information and belief alleges as follow:

### NATURE OF THE ACTION

1.    This is an action at law to redress the deprivation of rights secured to the plaintiff under color of statue, ordinance, regulation, custom, and or to redress the deprivation of rights, privileges, and immunities secured to the plaintiff by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United

1

States, and by Title 42 U.S.C. § 1983 [and § 1985], [and arising under the law and statutes of the State of New York].

## JURISDICTION

2.   The jurisdiction of this Court is invoked under 28 U.S.C. § 1343(3), this being an action authorized by law to redress the deprivation of rights secured under color of state and city law, statute, ordinance, regulation, custom and usage of a right, privilege and immunity secured to the Plaintiff by the Fourteenth Amendment to the Constitution of the United States. Jurisdiction of this Court exists pursuant to 42 U.S.C. § 1983 and under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

3.   All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's Supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties transactions, and injuries that form the basis of Plaintiff's federal claims are identical to the events parties, transactions, and injuries that form the basis of Plaintiff's claims under applicable State and City laws.

4.   As the deprivation of rights complained of herein occurred within the Southern District of New York, venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

## SATISFACTION OF THE PROCEDURAL PREREQUISITE FOR SUIT

5. All conditions precedent to the filing of this action have been complied with, a sworn written notice of claim was served upon the defendant City of New York. The Plaintiff's claim was assigned the numbers 2013PI 029244 by the City of New York's Comptroller's office.

6. At least thirty days have elapsed since the service of the above mentioned notice of claim, and adjustment or payment of the claim has been neglected.

7. This action, pursuant to New York State and City law, has been commenced with in the statutes of filing notice of claims.

8. This complaint was filed timely under New York State one year and ninety days statute of limitation and 42 U.S.C. § 1983 three year statute of limitation.

## PARTIES

9. Plaintiff, ANTHONY BLUE, reside at Five Points Correctional Facility, located at State Route 96, P.O. Box 119, Romulus, New York 14541, and is a resident of New York.

10. The action which form the underlying basis for this case all took place in the County of New York, within the Jurisdiction of the Southern District of New York.

11. Defendant CITY OF NEW YORK, is a municipality in the State of New York located at 100 Church St., 5th Floor New York, N.Y. 10007, and employs the Defendant Police Officers.

12. Defendants SGT. JOLT MENA; DET. ANDRE WILLIAMS; DET.

ADAM TEGAN; DET. ROBERT YARBROUGH; DET. MICHAEL MORALES
DET. ROBERT DELBUSTO; DET. DENNY ACOSTA; P.O. STEVEN
VAGNINI, ARE POLICE OFFICERS OFFICERS of the 33rd
precinct for the CITY OF NEW YORK located at 2207
Amsterdam Ave., New York, N.Y. 10032. Defendant
officers were acting under color of state law. They are
being sued individually, severally and in their offical
capacity.

## PREVIOUS LAWSUIT BY PLAINTIFF

13. Plaintiff has filed no other law suits dealing with
the same facts involved in this action or otherwise
relating to his current incarceration.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Plaintiff has no administrative remedies available for
the claims herein.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSE OF ACTION

15. On or about August 27, 2012 at 2:55 p.m. I the
Plaintiff, ANTHONY BLUE, was standing on a public
sidewalk in front of 615 West 161st street in the
County of New York, using my cellphone. I was not
engaged in any illegal activities or in possession
of any contraband, nor at the time was there any ar-
guably reasonable facts or circumstances at the time
warranting the belief that I was committing or had
committed a crime prior to, during or after the time
mentioned, anywhere in the County of New York.

16. At that time Defendant SGT. JOLT MENA approached
me without announcing himself as a police officer,
hand on his gun and shouting, "Don't move put your

phone down!" and then seized my $500 phone from my hand without probable cause or a warrant to do so.

17. After forcing me to sit down on the street. Defendant Mena asked me what was I doing. I told him waiting on a friend. He then asked for my identification and I showed him my Drivers License. A few seconds later defendant DET. ROBERT YARBROUGH appears and Mena tells Yarbrough to search me. I said, "For what? Am I under arrest? I know about stop and frisk. I don't consent." Yarbrough continued anyway by reaching into my shirt and pants pockets and removed my wallet containing $400 dollars, $7 dollars in coins and peppermint candies, without a warrant or any arguably reason to do so. As the supervising officer Mena failed to intervene and prevent the violation of my rights.

18. Two minutes later defendant P.O. STEVEN VAGNINI and several unknown N.Y.P.D. uniformed officers surround me, Mena and Yarbrough. Mena told Vagnini to take me to a car. I again demanded to know if i was under arrest No one answered. Vagnini searches me again by placing his hands in my shirt and pants pockets without a warrant or any arguably reason to do so. He then places my hands behind my back and cuffed me. He did not read me any Miranda rights as I was pulled roughly to a car.

19. At the patrol car I informed Vagnini that the cuffs were too tight and are hurting my wrist. He says,"Oh, really." and then he tightens them even more causing my wrist sever pain. I tell him, "Why are you hurting me? He tells me, "Just shut up and get in the car."

As I tried to get in, I tripped and Vagnini kicked me upon my buttocks causing me to fall and injure my shoulder; in addition, to injuring my wrist by causing the cuffs to cut into my skin causing bleeding and sever pain. Defendants Mena and Yarbrough observed the malicious act and failed to intervene or correct it.

20.  About 10 minutes later Defendant DET. ANDRE WILLIAMS appears and takes a picture of me on the floor in pain with his cellphone. Williams asked Mena, "What was he doing when you saw him?" Mena replied,"Standing infront of that building on his phone. I have it and his wallet." Mena then gives my wallet and phone to Williams. I overhear both Mena and Williams conspire as to what reason to use for seizing me and my property. At no time did any of the defendants intervene to prevent the violation of rights complained herein.

21.  Maybe five minutes or more later Vagnini and an unknown officer transported me to the 33rd precinct in New York County. Vagnini placed me in a holding cell and refused to remove the handcuffs after I complained of the pain and bleeding. He responeded, "I can't they told me not too." At no time did defendant attempt to prevent the continued harm caused by his malicious use of excessive force.

22.  About 40 minutes later Defendants Mena, Williams, Vagnini and Yarbrough enter the holding cell. Mena tells Yarbrough and Vagnini to strip search me. Yarbrough tells me to remove my clothes. I refused and backed away. Vagnini then

assaulted me with excessive force by placing me in a choke hold causing me pain in my neck, loss of breath, and weakness, while Yarbrough removed my clothing and $25,000 dollars in jewelry. Then they forced me to expose my genitals and rectum  for a search without a warrant to do so. At no time did Mena or Williams intervene to prevent the malicious actions.

23. Mena tells Vagnini to cuff me and take me upstairs to the detective squad room. He placed me in a cell with no toilet or sink facing a desk in which Defendant Williams was sitting at and going thru my phone. I asked him what he was doing and he says," Looking for evidence." I tell him I would like to make a phone call to my lawyer or family. He tells me, "You can't call anyone till I find what I'm looking for." I complained about the cuffs and the pain in my kneck,wrist and shoulder. He tells me, "There's nothing I can do about that."

24. About a half hour later Defendants DET. MICHAEL MORALES and DET. ROBERTO DELBUSTO inters the squad room and ask me if I own a grey convertible. I tell them yes. Morales says," We found it and drove it here. How do you turn off the alarm? The remote is not working. Oh, and you got a ticket." I tell him,"Why were you in my car. My keys were in my glove compartment. You can't search a persons car without a warrant. Delbusto replied,We didn't need one." Morales says that he will disconnect the battery to stop the alarm. He did and caused $1,500 dollars in damages to my cars electrical system.

25. About 10 minutes later defendants Mena, DET. ADAM TEGAN,

Yarbrough, DET. DENNY ACOSTA enter the squad room. Mena asked Morales and Delbusto if they found any thing in my car. Delbusto replied, "Just his keys and registration in the glove box." Mena asked Williams if he got anything. Williams says,"I came across some pictures in his phone that looks like he smoking weed." Tegan says, "If you want I can do an affidavit stating a C.I. saw a gun in his apartment during a buy and bust." Acosta adds, "I came across a recent arrest photo of him maybe we can work that in too." Morales says, "I can say I found some stuff in his car to get probable cause." Mena tells them all, "O.K. make it happen." For a few minutes more I overhear all defendants continue to conspire to falsify facts to support the illegal warrants.

26. As they began to leave the room, I asked Mena since it seemed that he was in charge, to have the handcuffs removed cause they were causing me sever pain. He tells me, "Someone will take them off soon." Then he leaves. The Defendants left me handcuffed all night in the cell without food or water. I was unable to sleep because of the sever pain in my kneck, wrist and shoulder.

27. About 10 a.m. the next morning Williams returns. I complained about being left overnight cuffed and the pain and also that I was hungry and thirsty. He tells me, "I thought I told someone to take them off." He finally removes them after about 19 hours. I asked him,when do you plan on taking me to court." He says,"Soon as some-thing comes up you are out of here." I asked to make a phone call. Williams tells me, "You can't use the phone

until we search your place." Then he leaves.

28. Later that day Defendants Mena, Williams, Yarbrough, Tegan, Morales, Acosta and Delbusto gathered in the 2nd floor squad room across from the cell I was confined. I observed Defendant Mena tell the other defendants that they have obtained an illegal warrant to search my apartment. He continues that there may not be anything there but to take everything jewelry, electronics, etc." Hopefully some or all is stolen. If not, these people always have drugs, we may get lucky.", Mena says. On or about 6:30 p.m. August 28, 2012, The Defendants broke into my apartment and wrongfully removed all my personal property illegally without my permission or consent. My property taken consisted of $60,000 in jewelry, $40,000 in electronics, $20,000 in Misc., $800.00 in cash and papers among which receipts proving ownership of property taken. All defendants were aware that the warrant was illegal and yet removed my property which was outside the scope of the warrant.

29. About 10:30 p.m. that evening Defendant Williams makes out a false complaint charging me with attempt burglary on August 27, 2012. Shortly after Defendants Morales and Tegan handcuffed me and transported me to Manhattan Criminal Court without a warrant or my permission.

30. On or about August 29, 2012 around 11:00 am I was arraigned on the false attempt burglary charge. Bail was set at $40,000 bond and $20,000 cash and adjourned to August 31, 2012. I could not make bail and was confined to New

City Department of Corrections.

31. On August 31, 2012, I was released on my own recognizance on the attempt burglary charge file by defendant Williams. Defendants Morales and Tegan appears in the Courtroom and places me in handcuffs without reading me Miranda rights and transported me to the 33rd precinct without my consent or a warrant to do so. They confined me to a cell in the 2nd floor squad room as before.

32. Defendant Acosta was sitting at a desk across from the cell I was in talking to defendant Williams on speaker phone about my laptop worth $2,100 dollars. He tried to coerce me into giving them my password. I refused stating that it was mine and I have the receipt to prove it. Williams tells Acosta, "Just put it down as stolen. We don't have anything on him after all the trouble we went through to get in his place." Then both Defendants continued to conspire on how to write up the complaint.

33. About 10:00 p.m. that evening Defendants Acosta and Tegan place me in cuffs without a warrant or my permission and transport me to Bronx Criminal Court and confine me to a cell. The next morning defendant Acosta returns and releases me without any explination. I was never arrainged on the stolen property charge filed by Acosta and it was later dismissed and sealed for decline to prosecute.

34. On or about March 13, 2013 the attempt burglary charge maliciously filed by Williams was dismissed and sealed pursuant to CPL§ 30.30 and decline to prosecute.

35. The false arrest for tresspassing by defendants Vagnini and Mena was never filed so there is no disposition.

36. On or about March 14, 2013, I called defendants Mena and
    Williams at the 33rd precinct and demanded the return of
    my property. I was told by them that some was turned over
    to A.D.A Erica O'Brien and some to 1 Police Plaza to be
    auctioned and destroyed and as far as the rest they do
    not know what happened to it, file a clomplaint. I filed
    several complaints request the return of my property
    illegally seized and conversioned by the Defendants with
    the Civilian Complaint Review Board. I have not recieved
    any of my property or compensation for the loss.

37. At no time prior to or during the events was there prob-
    able cause to arrest me, nor was it reasonable for the
    defendants to believe that probable cause existed.

38. At no time did any defendant take any steps to intervene
    in, prevent, or otherwise limit the misconduct engaged in
    by the defendants against me.

39  The defendant officers intentionally and deliberately
    gave false statements and/or failed to file accurate or
    corrective statements, or otherwise failed to report the
    conduct of the defendants who engaged in the misconduct
    described herein as required.

40. As a direct and proximate result of defendants; actions,
    I suffered and continue to suffer injuries, including
    but not limited to emotional distress, nightmares, and
    severe anger bouts some or all of which may be permanent.

41. My false arrest, wrongful imprisonment because of defend-
    ants' knowledge of a lack of any legitimate cause or jus-
    tification, were intentional, malicious, reckless in bad
    faith.

42. The Defendants SGT. JOLT MENA; DET. ANDRE WILLIAMS; DET. ADAM TEGAN; DET. ROBERT YARBROUGH; DET. MICHAEL MORALES; DET. ROBERT DELBUSTO; DET. DENNY ACOSTA AND P.O. STEVEN VAGNINI conspiracy and their knowledge of a lack of any legitimate cause or justification to illegally seize, auction and destroy my property, were intentional, malicious, reckless and in bad faith.

43. As a direct and proximate result of defendants' actions, I was deprived of rights, privileges and immunities under the fourth, fifth and fourteenth Amendments to the United States Constitution and the laws of the City of new York and the State of New York.

44. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to properly sanction or discipline police officers including the defendants in this case, for violations of the constitutional rights of citizens, thereby causing police officers including defendants in this case, to engage in unlawful conduct.

45. Defendant City of New York, as a matter of policy and practice, has with deliberate indifference failed to sanction or discipline police officers including the defendants in this case, who are aware of and subsequently conceal violations of the constitutional rights of citizens by other police officers thereby causing and encouraging police officers including defendants in this case, to engage in unlawful conduct.

46. That the defendant City of New York was responsible for ensuring that reasonable and appropriate levels of

supervision were in place within and over the N.Y.P.D.

47. Defendant New York City had actual or constructive knowledge that there was inadequate supervision over and /or within the NYPD with respect to its members' abuse of their authourity, abuse of arrest powers and other blatant violations of the United States Constitution and rules and regulations of the NYPD. Despite ample notice and/ or knowledge of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to ensure that NYPD members engaged in police conduct in a lawful and proper manner, inclusive of use of their authority as law enforcement officers with respect to the general public and specificaly to me herein.

48. The defendant City of New York deliberately and intention- ally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of police authority by its NYPD employees and thereby deliberately and intentionally adopted, condoned and otherwise created through deliberate inaction and negligent supervision and NYPD policy, practice and custom of utilizing illegal and impermissible searches, seizures, arrests and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, , up to and beyond my arrest.

49. That all of the acts and ommissions by the defendant officers described above were carried out pursuant to overlapping policies and practices of the municipal

13

defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practice procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

50. The existence of the unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in a long history of civil actions in state and federal courts.

51. In an Order dated August 12, 2013, in Floyd v. City of New York, 959 F. Supp. 2d 540 (SDNY), the court held that:

Plaintiffs' expert was more reliable than City's experts, officers violated plaintiffs; Fourth and Fourteenth Amendment rights in various encounters , New York City Officials ignored obvious need for better supervision, monitoring, training, and dis-cipline, City;s practice under policy were suffecent -ly widespread that they had force of law, plaintiffs provided sufficient basis for inference of City's discriminatory intent in applying its policy, policy dependent on express racial classifications; and City officials demonstrated deliberate indifference to equal protection violations.

52. That on more than half of the occassions where the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

53. That the defendant New York City has not only tolerated, but actively fostered a lawless atmosphere within the NYPD

14

and that the City of New York was deliberately indiffernt
to the risk and the inadequate level of suprvision would
lead to violation of individual constitutional rights in
general, and cause the violation of my rights in particular.

54. The action of all defendants, acting under color of State
law, deprived me of my rights, privileges and immunities
under the laws and Constitution of the United States, in
particular, the right to be secure in my property and
person, to be free from excessive use of force and from
malicious prosecution, conversion, replevin, and the right
to due process.

55. All defendants have deprived me of rights secured by the
Fourth, Fifth and Fourteenth Amendments to the United
States Constitution, in violation of 42 U.S.C. § 1983.

56. This action has been commenced within three years after
the happening of the event s upon which the claim is based.

**AS A FIRST CAUSE OF ACTION: AGAINST SGT. JOLT MENA; P.O STEVEN
VAGNINI; MICHAEL MORALES; ADAM TEGAN; DENNY ACOSTA: FALSE
ARREST AND FALSE IMPRISONMENT UNDER U.S.C.§ 1983, 1985 AND
NEW YORK STATE LAW**

57. By this reference, I incorporate each and every allegation
and averment set forth in paragraphs 1 through 56 of this
complaint as though fully set forth herein.

58. The arrest and imprisonment of me was without just or
probable cause and without any warrant or legal process
directing or authorizing my arrest or subsequent detention.

59. The defendant officers conspired among themselves to
deprive me of my constitutional rights secured by 42 USC

§ 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

60. As a result of my arrest and imprisonment, I have been caused to suffer humiliation, great mental anguish , and have been damaged in my character and reputation.

61. Consequently, I have been injuried and hereby demand compensatory and punitive damages in the amount of $750,000 dollars or an amount to be proven at trial against each of the defendants, individually and severally.

62. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City of New York is vicariously liable for the defendant officers acts as described above.

63. This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

**AS A SECOND CAUSE OF ACTION: AGAINST SGT. JOLT MENA; P.O STEVEN AND ROBERT YARBROUGH: EXCESSIVE FORCE UNDER 42 U.S.C. § 1983 AND ASSAULT UNDER NEW YORK STATE LAW**

64. By this reference, I incorporate each and every allegation and averment set forth in paragraphs 1 through 63 of this complaint as though fully set forth herein.

65. The level of force employed by one or more of the defendants was more than de minimis, objectionable and in violation of my constitutional rights.

66. At the time of my false arrest by the defendant officers, I did not challenge nor resist the defendants, nor engage in any threatening behavior towards the defendants.

67. However, as set forth above, the defendant officers assaulted me and subjected me to excessive force and summary punishment causing serious  physical injury.

68. The defendant officers were at all times acting within the scope of their employment, and as such, the defendant City of New York is vicariously liable for the defendant officers' acts as described above.

69. Consequently, I have been injuried and here by demand compensatory and punitive damages in the amount of $750,000 dollars or an amount to be proven at trial against each of the defendants, individually and severally.

70. This action falls within one or more of the exceptions of the New York State Civil Practice Law and Rules §1602.

**AS A THIRD CAUSE OF ACTION: AGAINST SGT. JOLT MENA; DET. ROBERT YARBROUGH; P.O. STEVEN VAGNINI; DET. ANDRE WILLIAMS; DET. MICHAEL MORALES; DET. ROBERT DELBUSTO; DET. ADAM TEGAN; DET. DENNY ACOSTA: UNLAWFUL SEARCH UNDER 42 U.S.C. § 1983 AND NEW YORK STATE LAW**

71. By this reference, the plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 70 of this complaint as though fully set forth herein.

72. Following my false arrest, the defendant officers searched and strip-searched and caused me and my property to be searched without any individualized reasonable suspicion that I was concealing weapons, contraband or evidence of any crime.

73. As a result of the foregoing, I was subjected to an illegal and improper search and strip search.

74. The foregoing unlawful search and strip-search violated my constitutional rights to privacy, as guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

75. As a consequence of the defendant officers' individual and collective actions as set forth above, I have suffered a loss of liberty, property, humiliation, mental anguish depression and constitutional injuries.

76. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City of New York is vicariously liable for the defendant officers' actions described above.

77. I have been injured and hereby demand compensatory and punitive damages in the amount of $750,000 dollars or an amount to be proven at trial against each of the defendants, individually and severally.

78. This action, upon information and belief, falls within one or more of the exceptions of CPLR §1602.

**AS A FOURTH CAUSE OF ACTION: AGAINST SGT. JOLT MENA; DET. ANDRE WILLIAMS; DET. ADAM TEGAN; DET. ROBERT YARBROUGH; DET. MICHAEL MORALES; DET. ROBERT DELBUSTO; DET. DENNY ACOSTA; P.O. STEVEN VAGNINI: UNLAWFUL SEIZURE UNDER 42 U.S.C. §1983, CONVERSION AND REPLEVIN UNDER NEW YORK STATE LAW**

79. By this reference, I incorporate each and every allegation and averment set forth in paragraphs 1 through 78 of this complaint as though fully set forth herein.

80. Each defendant officer exercised unauthorized assumpton of right of ownership of my property and excluded my rights to my property which defendants illegally seized.

81. Each defendant officers conspired among themselves to deprive me of my property and violate my constitutional rights secured by 42 U.S..C. § 1983, and by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

82. Defendant officers took numerous overt steps to prevent the return of my property after numerous request do so.

83. The defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment as NYPD officers. Said acts by the defendant officers were beyond the scope of their jurisdiction, without authority of law and in abuse of their powers, and said defendants acted willfully, knowingly, and with specific intent to deprive me of my property and my Fourth, Fifth, and Fourteenth Amendment rights.

84. As a consequence of the defendant officers' actions, I suffered loss of property, mental anguish, and depression. I have been injured by defendants actions and hereby demand compensatory and punitive damages in the amount of $750,000 dollars or an amount to be proven at trial against each of the defendants, individually and sever-ally.

AS A FIFTH CAUSE OF ACTION: AGAINST DET. ANDRE WILLIAMS; DET. DENNY ACOSTA: MALICIOUS PROSECUTION UNDER 42 U.S.C § 1983 AND NEW YORK STATE LAW

85. By this reference, I incorporate each and every alle-gation and averment set forth in paragraphs 1 through 84 of this complaint as though fully set forth herein.

86. The commencement and continued prosecution of the criminal judicial proceedings against me, including the arrests, the imprisonments, and the charges against me were committed by the defendant officers without probable cause or legal justification, and with malice.

87. That the defendant officers were directly involved in the initiation of criminal proceedings against me.

88. That the defendant officers lacked probable cause to initiate criminal proceedings against me.

89. That defendant officers acted with malice in initiating criminal proceedings against me.

90. That the defendant officers were directly invovled in the continuation of proceedings against me.

91. That the defendant officers lacked probable cause in continuing criminal proceedings against me.

92. That the defendant officers acted with malice in continuing criminal proceedings against me.

93. That the defendant officers conspired to misrepresent and falsify evidence to the prosecutors in the New York County District Attorney's office.

94. The criminal Judicial Proceeding initiated by DET.ANDRE WILLIAMS against me was dismissed on March 13,2013, and terminated in my favor.

95. The criminal judicial proceeding initiated by DET.DENNY ACOSTA against me was dismissed on September 11, 2014, and terminated in my favor.

96. The arrests, imprisonments and prosecution of me was malicious and unlawful, because I had committed no crime and there was no probable cause to believe that I committed

any crime.

97. The defendant officers actions were intentional, unwarranted and in violation of the law. The defendant officers had full knowledge that the charges made before the Court against me were false and untrue.

98. The defendant officers conspired among themselves to deprive me of my constitutional rights secured by 42 U.S.C. §1983 and 1985, and by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

99. As a consequence of the malicious prosecution by the defendant officers, I have suffered a loss of liberty, humiliation, mental anguish, depression and loss of property. I hereby demand compensatory and punitive damages in the amount of $750,000 dollars or in the amount of to be determined at trial, against each defendant officers, individually and severally.

**AS A SIXTH CAUSE OF ACTION: AGAINST SGT. JOLT MENA; DET. ANDRE WILLIAMS; DET. ADAM TEGAN; DET. ROBERT YARBROUGH; DET. MICHAEL MORALES; DET. ROBERT DELBUSTO; DET. DENNY ACOSTA; P.O. STEVEN VAGNINI: CONSPIRACY UNDER 42 U.S.C. § 1985, 1983 AND NEW YORK STATE LAW**

100. By this reference, I incorporate each and every allegation and averment set forth in paragraphs 1 through 99 of this complaint as though fully set forth herein.

101. Defendants Sgt. Jolt Mena, Det. Andre Williams and P.O. Steven Vagnini conspired and agreed amongst themselves to deprive me of Fourth Amendment right on August 27,

2012 and took overt steps to wrongfully arrest me, manufacture evidence against me, unlawfully search me and my home, unlawfully seize my property and not return my property and wrongfully and unreasonably brutalizing me, despite the lack of probable cause to do so.

102. Defendants Andre Williams and Det. Denny Acosta conspired and agreed to amongst themselves to deprive me of my Fourth Amendment right on August 31, 2012 and took overt steps to wrongfully arrest, manufacture evidence against me, unlawfully seize my property, despite the lack of probable cause to do so.

103. All defendant officers conspired and agreed amongst themselves to deprive me of my Fourth, Fifth and Fourteenth Amendment rights on August 28, 2012 and took overt steps to illegally search my home, illegally seize my property and not return my property.

104. The defendant officers were at all material times acting within the scope of their employment, and sa such, the Defendant City of New York is vicariously liable for the defendant officers' acts as described above.

105. Consequently, I have been injured and hereby demand compensatory and punitive damages in the amount of $750,000 dollars or an amount to be proven at trial against each defendant officers, individually and severally.

AS A SEVENTH CAUSE OF ACTION: AGAINST SGT. JOLT MENA; DET. ANDRE WILLIAMS; DET. ADAM TEGAN; DET. ROBERT YARBROUGH; DET. MICHAEL MORALES; DET. ROBERT DELBUSTO; DET. DENNY ACOSTA; P.O. STEVEN VAGNINI: FALSE ARREST, FALSE IMPRISONMENT, MALICIOUS PROSECUTION, EXCESSIVE FORCE, UNLAWFUL SEARCH, UNLAWFUL SEIZURE AND CONSPIRACY PURSUANT TO ARTICLE 1, SECTION 12 OF THE NEW YORK STATE CONSTITUTION

106. By this reference, I incorporate each and every allegation and averment set forth in paragraphs 1 through 105 of this complaint as though fully set forth herein.

107. The above-described respective assault, excessive force, false arrest, unlawful search, unlawful seizure, false imprisonment, detention and malicious prosecution of me was without just or probable cause and without a warrant or legal process directing or authorizing the arrest, search, seize of property, detention and subsequent detention of my person and property.

108. As a result of the malicious and illegal acts of the defendant officers, I have been injured, deprived of liberty, property and suffered humiliation, depression and mental anguish. I hereby demand compensatory and punitive damages in the amount of $750,000 dollars or in the amount to be proven at trial against the defendant officers, individually and severally.

109. The defendant officers were at all material times acting within the scope of their employment, and as such, the defendant City of New York is vicariously liable for the defendant officers acts as described above.

AS AN EIGHTH CAUSE OF ACTION: AGAINST THE CITY OF NEW YORK:
MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

110. By this reference, I incorporate each and every alleg-
     ation and averment set forth in paragraphs 1 through
     109 of this complaint as though fully set forth herein.

111. The defendant officers arrested and incarcerated me in
     absence of any evidence of criminal wrong doing, not
     withstanding their knowledge that said arrest and
     incarceration would jeopardize my liberty, well being,
     safety and constitutional rights.

112. The acts complained of were carried out by the indivi-
     dual defendants in their capacities as police officers
     and officials, with all the actual and apparent auth-
     ority attendant thereto.

113. The defendant officers acted under color of law, in their
     official capacity, and their acts were performed pursuant
     to the customs, policies, usage, practices, procedures
     and rules of the City of New York and its police de-
     partment.

114. The aforementioned customs, policies, usages, practices,
     procedures and rules of the City of New York and its
     police department include, but are not limited to the
     following unconstitutional practices:
     a. Wrongfully arresting individuals on the pretext that
     they were involved in illegal vice transactions;
     b. manufacturing evidence against individuals allegedly
     involved in illegal transactions;
     c. unlawfully searching detainees and their property in
     the absence of any reasonable suspicion that said

individuals were concealing weapons or contraband;

d. arresting innocent persons in order to meet "pro-
ductivity" goals (i.e. arrest quotas); and

e. wrongfully and unreasonably brutalizing innocent
members of the public, despite the lack of probable
cause to do so.

115. The aforesaid event was not an isolated incident. The
City and its police commissioner has been aware for
some time, from lawsuits, notices of claim, complaints
filed with the Civilian Complaint Review Board, and
judicial rulings suppressing evidence and finding
officers incredible as a matter of law, that a distur-
bing number of their police officers unlawfully search
and seized citizens, bringing charges against citizens
with no legal basis, perjured themselves in charging
instruments and testimony, and fail to intervene in
and report the obviously illegal actions of their
fellow officers. Nevertheless, the City and its police
commissioner have allowed policies and practices that
allow the aforementioned to persist.

116. For example, the well documented failure of the Civilian
Complaint Review Board("the CCRB"), a City agency, to
substantiate obviously meritorious citizen complaints
have gone uncorrected. The CCRB regularly finds com-
plaints lack credibility based on the fact that such
complaints have also brought lawsuits to remedy the
wrongs they have experienced, a practice that often
results in not substaintiating the most serious charges
brought against them. In addition, the CCRB virtually

never initiate their own finding of false statements against officers who have made false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

117. The NYPD, once received a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinaryily rare event, such as the matter at bar, that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer the commissioner still maintains the power to reduce the discipline against such an officer, which has been done on many occasions.

118. Further, the City and its police commissioner have no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seize practices and incredible testimony go uncorrected.

119. Additionally, according to a report of the New York City Bar Association issued in 2000, the City and Kelly

have isolated their law department from the discipline
of police officers, so that civil suits against police
officers for actions taken in their capacity as police
officers have no impact on the officers' careers, re-
gardless of the out come of the civil actions. Alan Hevesi,
as New York City Comptroller, in 1999 reported that there
was a "a total disconnect" between the settlements of
even substantial civil claims and police department
actions against police officers.

120. The existence of the aforesaid unconstitutional customs
and policies may also be inferred from the admission by
Deputy Commisioner Paul J. Browne, as reported by the
media on January 20, 2006, that commanders are permitted
to set "productivity goals".

121. Furthermore, the existence of the aforesaid unconsti-
tutional customs are policies may also be inferred
from the ruling of the Court (Southern District of New
York), in the case of Floyd v. City of New York, 959
F. Supp. 2d 540, wherein the court held that: Plaintiffs
expert was more reliable than City's experts, officers
violated plaintiffs' Fourth and Fourteenth Amendment
rights in various encounters, New York City Officials
ignored obvious need for better discipline, better super-
vision, monitoring and training , City's practice under
policy were sufficently wide spread that they had for-
ce of law, plaintiffs provided sufficient basis for
inference of City's discriminatory intent in applying
its policy, policy dependent on express racial classi-
fication, and City officials demonstrated deliberate

indifference to equal protection violations.

122. The aforementioned customs, policies, usages, prac-
tices, procedures and rules of the City of New York,
constituted a deliberate indifference to the safety,
well being and constituional rights to myself and
others; was the cause of, and moving force behind, the
constitutional violations I now suffer as alleged
herein, and deprived me of the following rights,
privileges secured to me by the Constitution of the
United States:

(a) The right to be secure in my person and effects
against unreasonable search and seizure under the
Fourth and Fourteenth Amendments to the Consti-
tution of the United States.

(b) The right not to be deprived of life, liberty, or
property without due process of law, and the right
to the equal protection of the law, secured to me
by the Fifth and Fourteenth Amendments to the
Constitution of the United States.

(c) The right to be free from unreasonable detention
and continued detention without probable cause in
that I was detained.

(d) The right to be free from the use of excessive
force.

123. As a result of the actions of the defendants, I was
deprived of my rights, privileges, and immunities sec-
ured by the United States Constitution, in particular
the Fourth, Fifth, and Fourteenth Amendments, in con-
travention of 42 U.S.C. § 1983 and  the laws of New

York State, and New York City without just or legal
cause when defendant City, by its employees and agents
unlawfully arrested and imprisoned  me thereby deprived
me of liberty without due process of law.

124. The defendant officers were the actual agents of the
defendant City of New York and were following the
customs, practices, ordinances and regulations of the
City of New York when they violated my constitutional
and civil rights, and the City of New York is there-
fore responsible for their acts, and liable to me for
the damages and losses I have suffered.

125. The actual principal/agent relationship between the
defendant City and the defendant officers was created
by the fact they were employees of the defendant City,
and the City had the right to, and it did indeed regu-
late and control the activities and conduct of the
defendant officers.

126. Consequently, I have been injured by the defendant City
and its employees and hereby demandcompensatory and
punitive damages in the amount of $750,000 dollars or
in an amount to be proven at trial against each defend-
ant, individually and severally.

### RELIEF

WHEREFORE, ANTHONY BLUE prays for judgement in his
favor and compensate me for my pain, loss of property and
mental anguish suffered due to the deliberate indifference
and intentional misconduct of all defendants, in no event
less than $750,000 and for as follows:

1.   For compensatory damages against all defendants in the

amount of $750,000 or in an amount to be proven at trial;

2.   For exemplary and punitive damages against all defendants in the amount of $750,000 or in an amount to be proven at trial;

3.   For costs of suit herein, including reasonable attorney fees if they should arise;

4.   For nominal damages against all defendants in the amount of $750,000 or in an amount to be proven at trial;

5.   For such other and further relief as the court deems proper.

I declare under penalty of perjury that the foregoing is true and correct. signed this 21st day May, 2016


ANTHONY BLUE, Plaintiff
# 15A4723
STATE ROUTE 96, P.O. BOX 119
ROMULUS, NEW YORK 14541

## AFFIDAVIT OF SERVICE

State of New York )
County of Seneca ) ss.:

I, Anthony Blue, being duly sworn, deposes and says:

That on 5/21/2016, I did in fact place the amended complaint and copies in case No. 14-CV-7836(VSB), in the mailbox at Five Points Correctional Facility to be duly carried to the following listed below:

Original
United States District Court
Southern District of New York
Pro Se Office #230
500 Pearl Street
New York, N.Y. 10007

Copy
City of New York
Law Department
100 Church Street, Room 3-135
New York, N.Y. 10007

Respectfully submitted,

Anthony Blue, Plaintiff
# 15A4723
State Route 96, Box 119
Romulus, New York 14541

Sworn to before me this

21 day of May ,2016

NOTARY PUBLIC

JOEL JENEAULT
Notary Public  State of New York
Qual. in Ontario Co. No. 01JE6151431
My Commission Expires December 10, 2018

neopost
05/24/2016
US POSTAGE $000.11⁰

ZIP 14541
041M11272007

MAY 24 20

USPS

Five Points

Correctional Facility

USDC SDNY

United States District Court
Southern District of N.Y.
Pro se Office #230
500 Pearl Street
New York, N.Y. 10007

Anthony Blue
#15A4723
State Route 96, Box 119
Romulus, New York 14541