UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
                        :

ANTHONY BLUE,                     :
                        :

                 Plaintiff,   :

           - against -      :

CITY OF NEW YORK, JOLT MENA,   :
ANDRE WILLIAMS, ROBERT      :
YARBOROUGH, ADAM TEGAN,    :
MICHAEL MORALES, ROBERT     :
DELBUSTO, DENNY ACOSTA, and  :
STEVEN VAGNINI, individually and in their :
official capacities,              :
                        :

              Defendants.  :
                        :
---------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/1/2018

14-CV-7836 (VSB)

**OPINION & ORDER**

Appearances:

Anthony Blue
*Pro se Plaintff*

Katherine Abigail Byrns
Nana Kwame Sarpong
New York City Law Department
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff Anthony Blue brought this pro se action on September 26, 2014, alleging

violations of 42 U.S.C. § 1983.  (Doc. 1.)  Before me is Defendants City of New York, Sergeant

Jolt Mena, Detective Andre Williams, Detective Adam Tegan, and Police Officer Steven

Vagnini's ("Movants") motion for summary judgment on each of the causes of action in

Plaintiff's Second Amended Complaint.  (Doc. 67.)

       Because I find that a genuine issue of material fact exists with respect to whether Mena

and Williams were personally involved in Plaintiff's alleged unlawful strip search, Movants'
motion for summary judgment is DENIED with respect to the § 1983 claims brought against
Mena and Williams based on the strip search.  I GRANT Movants' motion for summary
judgment with respect to all other claims.  The claims against Defendants Detective Robert
Yarborough, Detective Michael Morales, Detective Robert Delbusto, and Detective Denny
Acosta ("Additional Defendants"), other than the malicious prosecution claim resulting from
Plaintiff's arrest on August 31, 2012, are dismissed on statute of limitations grounds, and
Movants' motion is GRANTED with respect to those claims.  Because I find that Movants have
established that no genuine dispute exists as to any material fact regarding Plaintiff's other
federal claims, including the remaining malicious prosecution claim, and because I find that
Plaintiff failed to timely bring his pendent state law claims, Movants' motion for summary
judgment is GRANTED as to the other causes of action.

## I.      Rule 56.1 Statements

Local Civil Rule 56.1 provides that statements and counterstatements filed in support of
or opposing summary judgment should be "short and concise statement[s], in numbered
paragraphs, of the material facts" about which the parties contend there is or is not a "genuine
issue to be tried."  S.D.N.Y. Local Civ. R. 56.1(a).  "The purpose of Local Rule 56.1 is to
streamline the consideration of summary judgment motions by freeing district courts from the
need to hunt through voluminous records without guidance from the parties."  *Holtz v.
Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).  "Statements in an affidavit or Rule 56.1
statement are inappropriate if they are not based on personal knowledge, contain inadmissible
hearsay, are conclusory or argumentative, or do not cite to supporting evidence."  *Epstein v.
Kemper Ins. Cos.*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002).  A court may either disregard or

strike portions of a Rule 56.1 statement that violate these principles.  *Holtz*, 258 F.3d at 73.

Plaintiff's reply to Movants' Rule 56.1 statement primarily relies on Plaintiff's Second Amended Complaint, filed after Plaintiff was deposed and after I conducted the pre-motion conference related to Movants' summary judgment motion.  (*See generally* Pl.'s Reply 56.1.)[1] Certain of Plaintiff's responses in his reply to Movants' Rule 56.1 statement rely exclusively on the allegations in the Second Amended Complaint as the basis for Plaintiff's disagreement with Movants' assertions.  (*See id.* ¶¶ 3–4, 6–8, 10).  In other instances, Plaintiff's responses to Movants' factual assertions are not based on evidence in the record, but on a "reason to believe" in the falsity of those assertions or other conclusory phrases.  (*See, e.g., id.* ¶¶ 11–12.)  In other paragraphs, Plaintiff fails to cite to any documents, testimony, or other evidence in the record to support his responses to Movants' Rule 56.1 statement.  (*See id.* ¶¶ 18–21.)

A genuine dispute of fact does not exist merely because a litigant makes conclusory allegations to raise a dispute, particularly if the underlying record evidence contradicts the litigant's assertion.  *See BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (stating that an opposing party cannot defeat summary judgment by "merely . . . assert[ing] a conclusion without supplying supporting arguments or facts" (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978))).  Moreover, it is well-established in the Second Circuit that "factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony."  *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001); *see also Forde v.*

---

[1] "Pl.'s Reply 56.1" refers to Plaintiff's Reply to Defendants' Statement Pursuant to Local Civil Rule 56.1, filed July 28, 2016.  (Doc. 73.)

*Beth Isr. Med. Ctr.*, 546 F. Supp. 2d 142, 151 n.11 (S.D.N.Y. 2008) (stating that a plaintiff

cannot "create an issue of fact by disputing her own prior sworn testimony").  This is particularly

the case where the sworn deposition testimony concerns facts that are at the core of a plaintiff's

claim.  In accordance with this basic rule, "allegations are not 'deemed true simply by virtue of

their assertion in the Local Rule 56.1 statement.'"  *FTC v. Med. Billers Network, Inc.*, 543 F.

Supp. 2d 283, 302 (S.D.N.Y. 2008) (quoting *Holtz*, 258 F.3d at 73); *see also Holtz*, 258 F.3d at

74 ("Allowing a Local Rule 56.1 statement to substitute for the admissibility requirement set

forth in Fed. R. Civ. P. 56(e) 'would be tantamount to the tail wagging the dog.'" (quoting

*Rivera v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 479, 484 (S.D.N.Y. 1993))).

    As such, I disregard allegations that are "not accompanied by citation to admissible

evidence," where "the cited evidence does not support the allegation," and where allegations

rested on portions of the Second Amended Complaint that are contradicted by Plaintiff's own

sworn deposition testimony.  *See Med. Billers Network*, 543 F. Supp. 2d at 302.

## II.    <u>Background</u>[2]

    On August 27, 2012, Plaintiff and his codefendant were arrested and taken to the 33rd

Precinct of the New York City Police Department ("August 27 Arrest").  (*See* Defs.' 56.1 ¶¶ 1–

2; Pl.'s Reply 56.1 ¶¶ 1–2.)[3]  It appears from the record, although it is not entirely clear, that

Plaintiff was initially arrested for trespassing in violation of New York Penal Law § 140.15, and

later charged with burglary in the third degree in violation of New York Penal Law § 140.20.

(*See* Byrns Decl. Ex. C; Blue Decl. Exs. B, K.)[4]  When the officers attempted to place Plaintiff in

---

[2] Applying the above criteria to the submissions of the parties I find the following facts undisputed unless otherwise noted.

[3] "Defs.' 56.1" refers to Defendants' Rule 56.1 Statement of Undisputed Facts, filed June 23, 2016.  (Doc. 69.)

[4] "Byrns Decl." refers to the Declaration of Katherine A. Byrns in Support of Defendants' Motion for Summary Judgment, filed June 23, 2016.  (Doc. 70.)  "Blue Decl." refers to the Declaration of Anthony Blue in Opposition to

the patrol car, he "was protesting," "slow walking," and "a little pulling back." (Defs.' 56.1 ¶ 3.) The parties dispute whether it was just Yarborough or both Yarborough and Vagnini who placed Plaintiff in the patrol car, but Plaintiff's deposition testimony—which is admittedly unclear and to which Defendants cite—supports Plaintiff's assertion that both Yarborough and Vagnini were involved.[5] (*See* Byrns Decl. Ex. D; *but see* Blue Decl. Ex. K, at 89:18–21.) Thereafter, either Yarborough or Vagnini "threw" Plaintiff in the police car, (Byrns Decl. Ex. D, at 79:23), or otherwise "had to push [him] a little bit to get [him] in the car," and ultimately placed Plaintiff in the police car by "put[ting his] hand on [Plaintiff's] head, [and] push[ing Plaintiff] down and . . . in the car," (Defs.' 56.1 ¶ 4). This "pushing" was the only force used in the arrest. (Defs.' 56.1 ¶ 5; Pl.'s Reply 56.1 ¶ 5.) During his deposition—when asked whether any force was used while he was being arrested—Plaintiff stated that "[o]utside of [him] being pushed in the car," no other force was used. (Byrns Decl. Ex. D, at 89:24–90:1.)

Notwithstanding the fact that he had stated at his deposition that "push[ing]" was the only force used, (*id.* at 90:1), Plaintiff claimed that the physical injuries suffered as a result of the arrest were "cuffs being too tight and my wrists being bruised up," (Defs.' 56.1 ¶ 6; Byrns Decl. Ex. D, at 107:17–20). Plaintiff did not mention any other injuries during his deposition.[6]

Vagnini and another officer transported Plaintiff to the precinct, and thereafter Plaintiff

---

Defendants' Motion for Summary Judgment, filed July 28, 2016. (Doc. 76.)

[5] Plaintiff's deposition testimony, though unclear, refers to an arrest that took place on September 1, 2012. (Byrns Decl. Ex. D, at 90:2–3.) Based on Plaintiff's Second Amended Complaint and Defendants' Local Civil Rule 56.1 Statements, which cite to Plaintiff's deposition to support facts pertaining to the August 27 Arrest, I believe that Plaintiff in fact is referring to the August 27 Arrest but that Plaintiff used the incorrect date at the time of his deposition. (*See* SAC ¶ 15; Defs.' 56.1 ¶¶ 1–6.) "SAC" refers to Plaintiff's Second Amended Complaint, filed on May 31, 2016. (Doc. 64.)

[6] Although he did not mention other injuries during his deposition, Plaintiff claims in the Second Amended Complaint that he tripped as he tried to get in the patrol car, and in response Vagnini "kicked [him] upon [his] buttocks causing [him] to fall and injure [his] shoulder." (SAC ¶ 19.) Regardless of whether Plaintiff knew that he could have requested medical attention, (*see* Pl.'s Reply 56.1 ¶ 7), Plaintiff did not request any medical attention for his alleged injuries, (Defs.' 56.1 ¶ 7).

did not interact any further with Vagnini. (Defs.' 56.1 ¶ 8; Byrns Decl. Ex. D, at 82:10–23.)

Upon arriving at the precinct, Yarborough alone strip-searched Plaintiff. (Defs.' 56.1 ¶¶ 9–10;

Byrns Decl. Ex. D, at 81:21–82:9, 93:1–20.) It is disputed whether Mena and Williams were

also present and observed the strip search. (*Compare* Defs.' 56.1 ¶¶ 9–10 *with* Pl.'s Reply 56.1

¶¶ 9–10; *see also* Byrns Decl. Ex. D, at 81:21–82:6 (referencing both Williams and Mena at the

scene); Blue Decl. Ex. J, at 27:13–14 (stating that Williams "began the process to arrest and to

interview"); Blue Decl. Ex. K, at 85:23–86:2 (stating that Mena did not search Plaintiff but that

another officer "search[ed] his person").)

A search warrant for Plaintiff's apartment, as well as a search warrant for Plaintiff's

vehicle, was issued on August 28, 2012. (Defs.' 56.1 ¶¶ 11–12.) Williams executed the warrant

for the vehicle the same day it was obtained. (Blue Decl. Ex. J, at 29:1–7.) With respect to the

warrant for Plaintiff's apartment, it is not clear from the record when it was executed, but the

record is clear that the search of Plaintiff's apartment occurred soon after the warrant was

obtained. (*See* Byrns Decl. Ex. E; Blue Decl. Ex. J, at 29:14–30:9.) Plaintiff asserts that the

warrants were both falsified, and bases his claim on his assumption that Williams "made a whole

bunch of allegations that weren't true." (Defs.' 56.1 ¶ 13; Pl.'s Reply 56.1 ¶ 13.)

The charges against Plaintiff resulting from the August 27 Arrest were ultimately

dismissed on March 13, 2013. (Defs.' 56.1 ¶ 14; Pl.'s Reply 56.1 ¶ 14.) Plaintiff was also

arrested for possession of stolen property in the fourth degree under New York Penal Law

§ 165.45 on August 31, 2012 ("August 31 Arrest"), and these charges were dismissed on

September 11, 2014. (Pl.'s Reply 56.1 ¶¶ 14, 21; Blue Decl. Exs. D, E.)

However, on June 12, 2013, Plaintiff was arrested for burglary in the second degree, and

was later indicted on that same charge ("June 12 Arrest"). (Defs.' 56.1 ¶¶ 15–16; Pl.'s Reply

56.1 ¶¶ 15–16.)  During the proceedings held in connection with the June 12 Arrest, Plaintiff

challenged the admissibility of evidence seized from him during the August 27 Arrest, and a

hearing was held pursuant to *Dunaway v. New York*, 442 U.S. 200 (1979), and *Mapp v. Ohio*,

367 U.S. 643 (1961) ("Suppression Hearing") on March 20, 2014, with regard to the evidence

recovered from Plaintiff at the time of the August 27 Arrest.[7]  (Defs.' 56.1 ¶ 17; Pl.'s Reply 56.1

¶ 17; Byrns Decl. Ex. I.)  Following the Suppression Hearing, Justice Bruce Allen held that

because (1) Mena had seen Plaintiff and his former codefendant, Carnona Puello, together; (2)

Plaintiff matched the description on a wanted poster; (3) Plaintiff and Puello had given false and

evasive answers in connection with the August 27 Arrest; and (4) Puello was carrying certain

items used in a recent string of neighborhood burglaries, there were sufficient facts to give Mena

probable cause to arrest both Plaintiff and Puello on August 27.  (Defs.' 56.1 ¶ 18; Byrns Decl.

Ex. I.)[8]  Therefore, Justice Allen found that Mena was "justified in approaching [Plaintiff] and

asking pointed questions," that Plaintiff did not have standing to challenge the search, and the

evidence seized from Plaintiff during the August 27 Arrest was found pursuant to a valid search

incident to Plaintiff's arrest.  (Byrns Decl. Ex. I, at 3–4.)

      In connection with the June 12 Arrest, on October 15, 2015, Plaintiff was convicted of

five counts of burglary in the second degree.  (Defs.' 56.1 ¶ 19; Pl.'s Reply 56.1 ¶ 19.)  On

November 12, 2015, Plaintiff filed a notice of appeal related to his burglary convictions with the

Appellate Division of the Supreme Court, First Judicial Department.  (Defs.' 56.1 ¶ 20; Pl.'s

Reply 56.1 ¶ 20.)  On March 15, 2017, the Appellate Division of the Supreme Court, First

---

[7] Suppression Hearings are held to determine whether statements or objects obtained from persons during the course of an arrest without probable cause should be suppressed at trial.  *See Dunaway*, 442 U.S. 200; *Mapp*, 367 U.S. 643.

[8] This Exhibit does not have page numbers.  Accordingly, I refer to page numbers assigned to it by the Court's Electronic Case Filing ("ECF") system.

Judicial Department, denied Plaintiff's appeal.  *See People v. Blue*, https://www.nycourts.gov/ courts/ad1/calendar/appsmots/2017/March/ 2017_03_15_mot.pdf.

Separately, with respect to the August 27 Arrest and June 12 Arrest, Plaintiff submitted a notice of intention to file a claim against the City of New York, dated November 2, 2013, to the Office of the Comptroller of the City of New York.  (*See* Blue Decl. Ex. G.)  The case related to the June 12 Arrest was still pending when Plaintiff submitted his notice.

### III.    **Procedural History**

Plaintiff commenced this action by filing his complaint on September 26, 2014, alleging claims under 42 U.S.C. § 1983 to remedy the deprivation of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and requesting that the Court order the dismissal of a New York County indictment against him and release him from custody ("Complaint").  (Doc. 1.)  Plaintiff also submitted an order to show cause to enjoin defendants from acting in retaliation to Plaintiff filing his Complaint.  (Doc. 3.)

On October 27, 2014, Chief Judge Loretta A. Preska, to whom this case was originally assigned, issued an order to amend, which dismissed certain defendants and claims, denied Plaintiff's request for emergency injunctive relief, and granted Plaintiff leave to amend his Complaint to detail his claims for:  "(1) unlawful search and seizure, arising from the August 27, 2012 search of his automobile and cell phone; (2) false arrest and malicious prosecution, arising from the August 27 Arrest; (3) malicious prosecution, arising from the August 29, 2012 indictment for attempted burglary; and (4) false arrest and malicious prosecution, arising from the August 31, 2012 arrest for possession of stolen property."  (Doc. 10, at 13.)  Judge Preska further instructed Plaintiff not to "detail any claim that ha[d] been dismissed or name as a defendant any individual against whom all claims ha[d] been dismissed."  (*Id.*)  Although

Plaintiff included a conspiracy claim in his original complaint, Judge Preska did not approve Plaintiff including any claims for conspiracy in his amended complaint. (*See id.* at 6–7.)

On November 25, 2014, Plaintiff filed an amended complaint ("Amended Complaint"), which did not include a conspiracy claim, (Doc. 11), and on December 18, 2014, the case was reassigned to me, (*see* Dkt Entry Dec. 18, 2014). Thereafter, on December 19, 2014, I issued an order of service. (Doc. 13.) The City of New York answered the Amended Complaint on April 13, 2015, (Doc. 25), as did Tegan and Williams, (Doc. 26). I ordered Plaintiff to execute a New York Criminal Procedure Law § 160.50 release so that Defendants could gain access to Plaintiff's arrest records, (Doc. 30), and on August 3, 2015, issued a similar order, informing Plaintiff that the action would be dismissed for failure to prosecute if he did not file an executed release by August 21, 2015, (Doc. 39). On August 14, 2015, I was notified that Plaintiff had executed the release. (Doc. 40.) In the interim, on May 28, 2015, Mena and Vagnini answered the Amended Complaint. (Doc. 34.)

On November 30, 2015, I entered the case management plan, (Doc. 54), and on March 9, 2016, Movants requested leave to take Plaintiff's deposition on March 15, 2016, (Doc. 57). Upon Movants' request, I extended discovery until March 21, 2016, (Docs. 59, 60), and on April 25, 2016, I received Movants' pre-motion letter in anticipation of filing a motion for summary judgment, (Doc. 62). At the subsequent May 5, 2016 conference, I set a briefing schedule for Movants' motion for summary judgment, including a July 25, 2016 deadline for Plaintiff to file his opposition or amend his complaint. (Dkt. Entry May 6, 2016.)

Plaintiff filed a second amended complaint on May 31, 2016, adding the Additional Defendants ("Second Amended Complaint"). (Doc. 64.) After I granted the Movants' request for an extension of time to file their motion for summary judgment because of Plaintiff's filing of

the Second Amended Complaint, (Docs. 65, 66), Movants filed their motion for summary

judgment on June 23, 2016, (Docs. 67–70).  On July 28, 2016, Plaintiff filed his opposition,

(Docs. 73–76), and on August 29, 2016, Movants filed their reply, (Docs. 79–80).

### IV.    <u>Legal Standard</u>

Summary judgment is appropriate when "the parties' submissions show that there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a).

"[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the

governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."

*Id.*

On a motion for summary judgment, the moving party bears the initial burden of

establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at

256, and to present such evidence that would allow a jury to find in his favor, *see Graham v.

Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply

show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials. . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

Additionally, in considering a summary judgment motion, a court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citation and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

Pro se litigants are afforded "special solicitude" on motions for summary judgment.  *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988).  Courts read the pleadings, briefs, and opposition papers of pro se litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'"  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (stating that the submissions of pro se litigants are "held 'to less stringent standards than formal pleadings drafted by lawyers'" (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972))).

However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted); *see also Jorgensen v. Epic/Sony Records*, 351

F.3d 46, 50 (2d Cir. 2003) (stating that the obligation to read pro se pleadings liberally "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Bennett v. James*, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010) ("Notwithstanding the deference to which a *pro se* litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion, [the non-movant] must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial." (internal citations and quotation marks omitted)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## V.     Discussion

Movants' summary judgment motion seeks dismissal of the Second Amended Complaint on various grounds, including the fact that: (1) Plaintiff's claims against the Additional Defendants are untimely; (2) Plaintiff's false arrest and false imprisonment claims are barred under the doctrine of collateral estoppel; (3) Plaintiff's excessive force, unlawful search and seizure, unlawful strip search, malicious prosecution, and conspiracy claims fail as a matter of law; (4) Plaintiff has not met the conditions necessary to allege state law claims; and (5) Plaintiff's municipal liability claim is not premised on an actual constitutional violation and Plaintiff cannot otherwise demonstrate that the municipality was at fault. (*See* Defs.' Mem. 1–2.)[9]

---

[9] "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, filed June 23, 2016. (Doc. 68.)

## A.   *Timeliness*

Because 42 U.S.C. § 1983 does not provide a specific statute of limitations, courts apply

the statute of limitations for personal injury actions under state law in § 1983 actions.  *See Hogan*

*v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013).  In New York, the applicable statute of limitations

for § 1983 claims is three years.  *See id.*; *see also Patterson v. County of Oneida*, 375 F.3d 206,

225 (2d Cir. 2004).  "'Federal law determines when a [§] 1983 cause of action accrues,

and . . . accrual occurs when the plaintiff knows or has reason to know of the injury which is the

basis of his action.'"  *Hogan*, 738 F.3d at 518 (quoting *Pearl*, 296 F.3d at 80).  "Where no single

act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury,

the cause of action may not accrue until the wrong becomes apparent."  *Singleton v. City of New*

*York*, 632 F.2d 185, 192–93 (2d Cir. 1980).

Movants note that Plaintiff's latest accrued claim is his claim for malicious prosecution

following his August 27 Arrest.  (*See generally* SAC; *see also* Defs.' Mem. 19.)  Movants focus

on the accrual date of Plaintiff's malicious prosecution cause of action because if it is time-

barred against the Additional Defendants, it necessarily follows that the earlier-accrued claims,

subject to the same statute of limitations, are time-barred as well.[10]

A cause of action for malicious prosecution accrues "when the underlying criminal action

is conclusively terminated."  *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995).  The underlying

prosecution against Plaintiff stemming from the August 27 Arrest was terminated on March 13,

---

[10] In support of his argument that his claims are timely, Plaintiff notes that Acosta and Morales initiated other charges against him on August 31, 2012, which were dismissed on September 11, 2014.  (Pl.'s Opp. 16.)  However, Plaintiff's claim for malicious prosecution resulting from the August 31 Arrest can be dismissed against the Additional Defendants on other grounds, as will be addressed *infra*.  Although Plaintiff appears to have been charged on August 31, 2012 with criminal possession of stolen property in the fourth degree, and on September 11, 2014, that charge was indeed terminated in favor of the accused, (*see* Blue Decl. Exs. D, E), Plaintiff has not offered any admissible evidence to support a malicious prosecution claim in connection with that charge.  "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed July 28, 2016.  (Doc. 75.)

2013, (Byrns Decl. Ex. G), meaning that any malicious prosecution claim against the Additional

Defendants would have expired on March 13, 2016 absent equitable tolling or basis to relate the

charges back to the date of an earlier filed complaint.

### 1. Equitable Tolling

Equitable tolling is applied only in "rare and exceptional circumstances" where such

circumstances "prevented a party from timely performing a required act, and that party 'acted

with reasonable diligence throughout the period he sought to toll.'" *Walker v. Jastremski*, 430

F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)).

Plaintiff has not asserted any facts to justify equitable tolling. As such, Plaintiff's claim for

malicious prosecution against Additional Defendants stemming from the August 27 Arrest is

untimely unless it relates back to Plaintiff's earlier-filed complaints.

### 2. Relation Back

With respect to newly added defendants, a plaintiff may generally seek relation back

under two provisions: Federal Rule of Civil Procedure 15(c)(1)(C) or 15(c)(1)(A). Here,

Plaintiff's sole argument for relation back is that the Additional Defendants were not known until

after discovery. (Pl.'s Opp. 16.) However, as detailed below, the fact that the Additional

Defendants were not known does not satisfy any of the requirements set forth in the Federal

Rules for relation back of the Second Amended Complaint.

Rule 15(c)(1)(C) provides that an amendment relates back when (1) the amendment

asserts a claim that "arose out of the conduct, transaction or occurrence set out—or attempted to

be set out—in the original pleading;" (2) within the period provided by Federal Rule of Civil

Procedure 4(m), the newly named party received notice of the action such that it would not be

prejudiced in defending on the merits; and (3) also within the period provided by Rule 4(m), the

newly named party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). The Second Circuit has found that the rule "preclude[s] relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." *Hogan*, 738 F.3d at 517; *see also Arminio v. Holder*, No. 15 Civ. 5812 (NSR), 2016 WL 4154893, at *4 (S.D.N.Y. Aug. 1, 2016). Lack of knowledge, even with respect to a defendant originally named as a "John Doe," does not constitute a "mistake of identity." *See Hogan*, 738 F.3d at 518 (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995)). Plaintiff's sole argument for relation back is that the Additional Defendants were not known until after discovery. (Pl.'s Opp. 16.) Therefore, under Rule 15(c)(1)(C), Plaintiff's claims against the Additional Defendants are time-barred. *See Hogan*, 738 F.3d at 518.

Alternately, Rule 15(c)(1)(A) allows for relation back when "the law that provides the applicable statute of limitations allows relation back." Under New York law, section 1024 of the Civil Practice Laws and Rules ("CPLR") sets forth the specific procedure for claims alleged against John Doe defendants. Section 1024 provides that:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

N.Y. C.P.L.R. § 1024. At no point did Plaintiff, in his original complaint or amended complaint, "designat[e] so much of [the Additional Defendants'] name[s] and identit[ies] as is known." *Id.* In other words, Plaintiff failed to identify the Additional Defendants as John Doe defendants or otherwise. Therefore, Plaintiff cannot seek relation back under Rule 15(c)(1)(A).

Plaintiff similarly cannot seek relation back under New York's general relation back statute, section 203 of the CPLR, which "allows a claim asserted against a defendant in an amended complaint to relate back to claims previously asserted against a codefendant for statute of limitations purposes where the two defendants are united in interest." *Stevens v. Winthrop S. Nassau Univ. Health Sys., Inc.*, 932 N.Y.S.2d 514, 516 (2d Dep't 2011) (internal quotation marks omitted).  The party seeking the benefit of the relation-back doctrine under CPLR section 203 must show that:

> (1) both claims arose out of the same conduct, transaction, or occurrence, (2) the new party is united in interest with the original defendant, and by reason of that relationship, can be charged with notice of the institution of the action and will not be prejudiced in maintaining his or her defense on the merits by virtue of the delayed, and otherwise stale, assertion of those claims against him or her, and (3) the new party knew or should have known that, but for a mistake by the plaintiff as to the identity of the proper parties, the action would have been timely commenced against him or her as well.

*Murphy v. Kirkland*, 928 N.Y.S.2d 333, 339 (2d Dep't 2011) (quoting *Alvarado v. Beth Isr. Med. Ctr.*, 876 N.Y.S.2d 147, 149 (2d Dep't 2009)).  For the same reason stated above in relation to Rule 15(c)(1)(C), Plaintiff has not alleged and cannot show that his failure to identify the Additional Defendants was the result of a mistake of identification.  As such, other than the malicious prosecution claim resulting from the August 31 Arrest, Plaintiff's claims are fully time barred against the Additional Defendants.

### B.  *Collateral Estoppel*

Movants argue that, in light of Justice Allen's determination at the Suppression Hearing that Mena had probable cause to arrest Plaintiff on August 27, 2012, Plaintiff is collaterally estopped from now asserting that he was falsely arrested.  (Defs.' Mem. 4–6.)  In response, Plaintiff argues that the Suppression Hearing does not have preclusive effect because (1) Plaintiff did not specifically challenge his August 2012 arrests during the state proceeding because the

charges stemming from those arrests had been dismissed, nor was probable cause an issue raised at the trial; (2) Justice Allen's finding of probable cause at the Suppression Hearing was not a final decision; and (3) Plaintiff did not have a full and fair opportunity to litigate the issue—he did not request the Suppression Hearing to challenge the August 2012 arrests because the hearing was "for a codefendant."[11]  (Pl.'s Opp. 5–6.)   However, Justice Allen clearly stated at the outset of his opinion that the Suppression Hearing was "limited to evidence which was recovered from *the defendant's* person at the time of arrest."  (Byrns Decl. Ex. I, at 1 (emphasis added).)

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."  *Manbeck v. Micka*, 640 F. Supp. 2d 351, 364 (S.D.N.Y. 2009) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)).   Under New York law, the doctrine imposes two requirements:  "(1) 'there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action' and (2) 'there must have been a full and fair opportunity to contest the decision now said to be controlling.'"  *Johnson v. Watkins*, 101 F.3d 792, 794–95 (2d Cir. 1996) (quoting *Schwartz v. Pub. Adm'r*, 298 N.Y.S.2d 955, 1960 (1969)).

### 1.  The August 27 Arrest

A state court's determination at a pretrial suppression hearing that evidence was gathered from a lawful warrantless search incident to a lawful arrest is generally given preclusive effect.

---

[11] Plaintiff also disputes the legality of the suppression hearing, based entirely on the same objections raised during the state court proceeding—that evidence taken from Plaintiff's codefendant during an August 27, 2012 arrest should not have been used in the state court proceeding, given that the August 27, 2012 charge was dismissed. (*Compare* Pl.'s Opp. 5 *with* Blue Decl. Ex. I.)  However, Justice Allen considered and denied Plaintiff's application, explaining to him that "[y]ou can object when the witnesses are testifying if you think that the evidence or questions are improper, and you can cross examine about cases that have been dismissed and all of that.  But this is a suppression hearing, and they are allowed to call witnesses, and you'll be allowed to cross examine."  (Blue Decl. Ex. I, at 8:3–18.)  Plaintiff informed Justice Allen that he understood the Justice's determination.  (*Id.* at 8:19.)

*See, e.g.*, *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 426 (S.D.N.Y. 2012) ("Settled authority establishes that where, as here, a state court has determined that the warrantless search or seizure was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action." (internal quotation marks omitted)); *Mitchell v. Hartnett*, 262 F. Supp. 2d 153, 154–55 (S.D.N.Y. 2003) (barring a § 1983 claim based on an allegedly unlawful stop-and-search where the plaintiff had a full and fair opportunity to litigate his unlawful arrest claim in state court, and the court decided against suppression of evidence because the defendant was detained following a proper arrest); *Brown v. De Fillipis*, 717 F. Supp. 172, 179 (S.D.N.Y. 1989) (finding that there had been a final decision on the merits where the plaintiff challenged "the lawfulness of an arrest that was the subject of a motion to suppress in his criminal proceeding, in which he also challenged the lawfulness of his arrest," and the Appellate Division unanimously affirmed the plaintiff's guilty plea and conviction). Here, Plaintiff had a full and fair opportunity to object to the evidence and cross examine witnesses at the Suppression Hearing. (*See* Byrns Decl. Ex. I; Blue Decl. Ex. I (transcript of Suppression Hearing demonstrating Plaintiff's objections); Blue Decl. Ex. J (cross-examination of Williams at the Suppression Hearing); Blue Decl. Ex. K (cross-examination of Mena at the Suppression Hearing).) Following that hearing, Justice Allen conclusively determined that Mena, the supervising officer, had probable cause to arrest Plaintiff and Puello on August 27, 2012. (Byrns. Decl. Ex. I, at 1–4.)

A "full and fair opportunity to litigate" an issue is not had if appellate review is unavailable. *See Johnson*, 101 F.3d at 795. As such, preclusive affect is not given to a pretrial suppression hearing when the defendant is subsequently acquitted of the charges, as the defendant loses the opportunity to obtain review of any issues decided against him. *See id.* at

795–96; *see also Taylor v. City of New York*, No. 03 CV 6477(RLC), 2006 WL 1699606, at *8 (S.D.N.Y. June 21, 2006) (holding that the plaintiff did not have a "full and fair" opportunity to litigate the issue where he was acquitted following the determination of a pretrial suppression hearing against him, removing his incentive to appeal the results of the hearing).

Regarding the August 27 Arrest, Plaintiff misapplies this rule to the case at hand, seeking to use the dismissal on March 13, 2013 to negate the preclusive effect of the later-held Suppression Hearing on March 20, 2014, when the trial following the Suppression Hearing resulted in an appealable conviction. (*See* Byrns Decl. Ex. I.) In fact, unlike those cases declining to apply preclusive effect to pretrial suppression hearing determinations when the criminal proceedings are ultimately dismissed or the defendant otherwise acquitted, *see, e.g.*, *Jenkins v. City of New York*, 478 F.3d 76, 91–92 (2d Cir. 2007), Plaintiff here was subsequently *convicted* of the charges against him at the trial following the Suppression Hearing, and therefore had the opportunity to—and did—appeal the adverse determination, (*see* Byrns Decl. Exs. H, J). As a result, Plaintiff is now precluded from bringing a claim that the August 27 Arrest was a false arrest.

### 2. The August 31 Arrest

With respect to the August 31 Arrest, Justice Allen did not decide the legality of the August 31 Arrest during the Suppression Hearing; therefore, Plaintiff is not collaterally estopped from challenging this particular arrest. (*See* Bryns Decl. Ex. I.) However, the evidence demonstrates that probable cause existed to arrest Plaintiff on that date, such that Plaintiff's § 1983 claim for false arrest regarding the August 31 Arrest fails as a matter of law.

An arrest is justified or privileged if it is based on probable cause. *See LaFontaine v. City of New York*, No. 08 Civ. 1555(SHS), 2009 WL 3335362, at *5 (S.D.N.Y. Oct. 14, 2009);

*Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").  "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).

Here, the record is clear that Plaintiff's arrest for possession of stolen property was based on a stolen Apple laptop recovered from Plaintiff's apartment after a search was conducted pursuant to a warrant.  (*See* Blue Decl. Ex. D.)[12]  In fact, the laptop was identified by the victim of the crime as his, and the victim further stated that he had not given "permission or authority for [Plaintiff] to have possession" of the laptop.  (*Id.* at 45.)  "A person is guilty of criminal possession of stolen property in the fourth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede recovery by an owner thereof, and when . . . [t]he value of the property exceeds one thousand dollars . . . ." N.Y. Penal Law § 165.45.  Here, Acosta had probable cause to believe that Plaintiff committed this crime and, as a result, Plaintiff's claim for false arrest with respect to the August 31 Arrest must also be dismissed.

### C.    *Plaintiff's Remaining Claims*

Movants next argue that Plaintiff's federal claims for excessive force, unlawful search and seizure of Plaintiff's vehicle and apartment, malicious prosecution, and conspiracy fail as a matter of law, and that Plaintiff's claim for unlawful search of his person fails for lack of Movants' personal involvement.  (*See generally* Defs.' Mem. 6–18.)  Movants also argue that

---

[12] This Exhibit does not have page numbers.  Accordingly, I refer to page numbers assigned to it by ECF.

Plaintiff's pendent state law claims were not timely brought. (*See id.* at 21–22.)

### 1. Excessive Force

Plaintiff brings his excessive force claim against Mena, Vagnini, and Yarborough,[13] and alleges that these defendants used excessive force in connection with the August 27 Arrest when they "roughly" pulled him to the squad car, handcuffed Plaintiff too tight causing "sever[e] pain" and "bleeding," and "kicked [him] upon [his] buttocks causing [him] to fall and injure [his] shoulder." (SAC ¶¶ 18–19, 21, 23, 26–27.) However, Plaintiff's allegation that these defendants kicked him or otherwise injured his shoulder is belied by Plaintiff's sworn deposition testimony and other evidence, which shows only that after Plaintiff was "pulling back," either Yarborough or Vagnini "had to push [Plaintiff] a little bit to get [him] in the car" and otherwise "put [a] hand on [Plaintiff's] head" and push him "down and . . . in the car." (Defs.' 56.1 ¶ 4; Byrns Decl. Ex. D, at 79:20–81:8, *see also id.* at 89:24–90:1.) In fact, Plaintiff agrees that the pushing was the only force used in the arrest, (Defs.' 56.1 ¶ 5; Pl.'s Reply 56.1 ¶ 5), and only claims injuries resulting from "cuffs being too tight and [his] wrists being bruised up," (Byrns Decl. Ex. D, at 107:17–20; *see also* Defs.' 56.1 ¶ 6). Importantly, with respect to the overly tight handcuffs, Plaintiff complained immediately following his arrest that the "cuffs were hurting" and later, after the cuffs were removed, told Yarborough that the "cuffs were on too tight." (Byrns Decl. Ex. D, at 89:3–90:1.) Plaintiff did not, however, request medical attention for any purported injuries. (Defs.' 56.1 ¶ 7; Pl.'s Reply 56.1 ¶ 7.)

In the course of making an arrest, a police officer has an accompanying "right to use some degree of physical coercion." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Still, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of

---

[13] As stated previously, the excessive force claim against Yarborough is time-barred.

an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Id.* at 395. This "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Soares v. Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993) (quoting *Graham*, 490 U.S. at 396).

When evaluating a plaintiff's claim of excessive force in the use of handcuffs, courts in this Circuit balance law enforcement's need to handcuff suspects with the reasonableness of how tightly handcuffs are fastened. *See Sachs v. Cantwell*, No. 10 Civ. 1663(JPO), 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012). Overly tight handcuffing may constitute excessive force. *See, e.g.*, *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008); *Kerman v. City of New York*, 261 F.3d 229, 239–40 (2d Cir. 2001) (noting that "handcuff tightening," among other things, could be considered an "objectively unreasonable and therefore excessive" use of force). In considering Plaintiff's excessive force claim as it relates to the tightness of his handcuffs, I may consider evidence that "1) the handcuffs were unreasonably tight; 2) the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Lynch*, 567 F. Supp. 2d at 468 (quoting *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005)). "The injury requirement is particularly important, because in order to be effective, handcuffs must be tight enough to prevent the arrestee's hands from slipping out." *Morocho v. New York City*, No. 13 Civ. 4585(KPF), 2015 WL 4619517, at *8 (S.D.N.Y. July 31, 2015) (citations and internal quotation marks omitted). Generally, handcuffing that does not cause injury beyond temporary discomfort or bruising does not rise to the level of an excessive force claim. *See Lynch*, 567 F. Supp. 2d at

468–69.

Here, Plaintiff does not attach any photographs of his alleged injury, nor did he seek medical treatment as a result of the tight handcuffing. Although the failure to seek medical care is not necessarily "fatal," *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987), Plaintiff does not offer any evidence supporting a lasting injury; rather, the evidence, which comprises solely of Plaintiff's deposition testimony, shows only that his wrists were "bruised up," (Byrns Decl. Ex. D, at 107:17–20), which is not an injury sufficient to state a claim for use of excessive force, *see, e.g.*, *Gonzalez v. Bronx Cty. Hall of Justice Court Officer Mark Hirschman Shield 7421*, No. 1:15-cv-810-GHW, 2016 WL 354913, at *4 (S.D.N.Y. Jan. 28, 2016) ("[The plaintiff's] allegations of 'bruising and abrasions to her wrists' as a result of the tight handcuffs are precisely the type of minor injuries routinely held by courts in this circuit to be insufficient to state a claim of excessive force.") (collecting cases).

Finally, with respect to the evidence supporting Plaintiff's allegation that he was pushed into the car, it is clear that any pushing resulted from Plaintiff's physical resistance to arrest and, as the Second Circuit has noted, "[n]ot every push or shove by a state officer constitutes a violation of substantive due process." *Robison*, 821 F.2d at 923 (finding the fact that the defendant had "pushed or pulled or pried" at the plaintiff's fingers "was entirely insufficient to show excessive force"); *see also Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (affirming the district court's overturn of the jury verdict and entering judgment in favor of the defendants when, after the plaintiff "lightly resisted by stiffening his legs," the defendants "did nothing more" than grip the plaintiff's shoulders and push him out of his mother's apartment to the police car, and the pushing did not cause the plaintiff any injury).

Since neither the handcuffing nor the pushing suffice to establish an excessive force

claim, summary judgment is granted with respect to this claim.

### 2. Search of Plaintiff's Apartment and Vehicle

Plaintiff objects to the search warrants issued for his vehicle and apartment because he claims that Williams "made a whole bunch of allegations that weren't true." (Defs.' 56.1 ¶ 13; Pl.'s Reply 56.1 ¶ 13; *see also* Byrns Decl. Exs. E, F.) Williams submitted an affidavit in support of the search warrant for Plaintiff's vehicle. (Byrns Decl. Ex. F.) Plaintiff does not cite any evidence to support his belief in the falsity of Williams's statements. Plaintiff also concludes, without citing or otherwise identifying any evidence, that the assistant district attorney assigned to his criminal case forged an affidavit supporting the warrant for the apartment, and states that he has "reason to believe" the warrant issued for his vehicle "also is a forgery." (Pl.'s Reply 56.1 ¶¶ 11–12.) Finally, Plaintiff claims—again without citing any evidence and in direct conflict with the warrant issued to search his apartment, (*see* Byrns Decl. Ex. E)—that the search warrant for his apartment could not have been signed by the Honorable Bart Stone "because he retired before the August 27, 2012 incident occurred," (Pl.'s Reply 56.1 ¶ 11).

At no point does Plaintiff provide any evidence to question or otherwise dispute that the searches of his apartment and vehicle were pursuant to lawful search warrants. (*See* Byrns Decl. Exs. E, F.) In fact, the evidence demonstrates that the search warrants satisfied all requirements for validity: they were issued by "neutral, disinterested" judges, there was "probable cause to believe that the evidence sought [would] aid in a particular apprehension or conviction for a particular offense," and the warrant specifically described the items "to be seized, as well as the place to be searched." *Lynch*, 567 F. Supp. 2d at 464–65 (quoting *Dalia v. United States*, 441 U.S. 238, 255 (1979)). "A magistrate's determination that probable cause exists to support the

issuance of a warrant is entitled to 'great deference' from a reviewing court." *Id.* at 465 (quoting *United States v. Leon*, 468 U.S. 897, 914 (1984)). Plaintiff's conclusory allegations of forgery and fraud do not make a "substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause," *id.* at 466 (internal quotation marks omitted), such that Plaintiff can rebut the presumption that it was objectively reasonable for the officers to believe there was probable cause. Plaintiff's claims for unlawful search and seizure related to the warrants issued for his apartment and vehicle are therefore dismissed.

### 3. Malicious Prosecution

To state a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must allege the elements of a state-law malicious prosecution claim as to a state actor. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). The elements of malicious prosecution are: (1) the initiation of a prosecution against a plaintiff; (2) without probable cause; (3) the proceedings were begun with malice; and (4) the matter terminated in plaintiff's favor. *See O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996). A plaintiff must also have suffered a sufficient post-arraignment deprivation of liberty implicating his Fourth Amendment rights. *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003); *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000).

Plaintiff's Second Amended Complaint contains a charge that Williams maliciously prosecuted Plaintiff for the burglary charge resulting from the August 27 Arrest, and that Acosta maliciously prosecuted Plaintiff for criminal possession of stolen property related to the August 31 Arrest. (*See* SAC ¶¶ 94–95; *see also* Bryns Decl. Ex. C; Blue Decl. Ex. D.) The burglary

charge was dismissed on March 13, 2013, (Byrns Decl. Ex. G), and the district attorney declined prosecution of the criminal possession of stolen property charge on September 11, 2014, (Blue Decl. Ex. E). In connection with the burglary charge, Williams submitted an affidavit on August 28, 2012, upon which Plaintiff was presumably arraigned. (Blue Decl. Ex. C.) In connection with the stolen property charge, Plaintiff submits the August 31, 2012 arrest report, which is signed by Defendant Acosta. (Blue Decl. Ex. D.)

Movants do not appear to dispute that the criminal proceedings against Plaintiff terminated in his favor or that he suffered a post-arraignment deprivation of his liberty. (Defs.' Mem. 14.) Instead, they argue that Plaintiff's malicious prosecution claim is lacking because Williams and Acosta did not initiate the prosecution, the prosecution was supported by probable cause, and there is no evidence that the proceedings were begun with malice. (*Id.*)

In malicious prosecution claims brought against police officers, the standard for initiation of a criminal proceeding is different from the standard imposed upon laymen. Although a presumption that a prosecutor exercises independent judgment in deciding whether to bring a criminal proceeding exists, "plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints." *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006); *see also Alcantara v. City of New York*, 646 F. Supp. 2d 449, 457–58 (S.D.N.Y. 2009); *Espada v. Schneider*, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007).

In the case of Acosta, Plaintiff submits only an arrest report, and there is otherwise no proof that Acosta played any role in initiating the subsequent criminal proceeding. As a result, Plaintiff's claim for malicious prosecution against Acosta does not survive summary judgment.

With respect to Plaintiff's malicious prosecution claim against Williams, Plaintiff has presented a signed affidavit by Williams charging Plaintiff with the crime, and demonstrated that Williams was otherwise involved with the arrest. (*See* Blue Decl. Ex. C; Byrns Decl. Exs. E, F.) As such, there are disputed issues of fact with respect to Williams' initiation of the prosecution. *See Espada*, 522 F. Supp. 2d at 553 (finding that although there is cause for concern with the application of a rigid rule, a jury could conclude that the officer was seeking out the prosecution of the plaintiff and therefore initiated the proceeding, particularly in light of his involvement in the initial arrest); *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005) (finding that where the detective signed the accusatory instrument, a jury could find that the officers were sufficiently involved in initiating the criminal proceeding later brought against the plaintiff).

Even though there are disputed issues of fact with respect to Williams' initiation of the prosecution against Plaintiff, the malicious prosecution claim against Williams must be granted for Movants in light of the existence of probable cause. "The existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). If probable cause as to the arrest exists, probable cause "continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (summary order) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)). "Probable cause to arrest differs from probable cause to *prosecute* because the evidentiary standard is higher for the latter than for the former." *Hoyos v. City of New York*, 650 F. App'x 801, 802 (2d Cir. 2016) (summary order). Williams' affidavit was signed just one day after the arrest, and was based upon (1) information from an individual

who, at the apartment building in front of which Plaintiff was found, returned to find an object jammed in her lock; (2) Mena's observation of Plaintiff entering and exiting that building, and finding upon Plaintiff's former codefendant a piece of thin metal and small round stickers "commonly used in burglaries to cover peepholes;" (3) recovery from Plaintiff's vehicle of a rubber glove and a small box containing the same small round stickers; (4) surveillance footage showing Plaintiff and the former codefendant entering the building and taking stairs to a higher floor; and (5) Plaintiff's former codefendant stating to Williams "in substance" that he went inside the building "to commit a burglary." (Blue Decl. Ex. C.) In the pretrial Suppression Hearing held in connection with the later criminal proceeding, Williams testified, in connection with the warrants executed pursuant to the August 27 Arrest, that he recovered lock picks from Plaintiff's home. (Blue Decl. Ex. J, at 30:12–25.) Plaintiff has presented no evidence to dispute any of these facts, but instead rests his argument on inserting "the defendants" into blank statements of the law that would otherwise entitle a plaintiff to finding a lack of probable cause were these statements sufficiently supported. (*See* Pl.'s Opp. 13.) Given the lack of any meaningful dispute of fact as to the existence of probable cause, Movants are entitled to summary judgment on Plaintiff's malicious prosecution claim.

### 4. The Strip-Search

In his Second Amended Complaint, Plaintiff also brings a claim detailing an alleged unlawful strip search of him at the precinct following the August 27 Arrest. (SAC ¶¶ 71–78.) Plaintiff brings this claim against Yarborough, Vagnini, Mena, Williams, Morales, Delbusto, Tegan, and Acosta. (*Id.*) Movants argue that summary judgment in their favor on this claim is warranted because it is undisputed that none of the Defendants—other than Yarborough, against whom I have already decided claims are time barred—were personally involved in, or present

during, the strip search.  (Defs.' Mem. 9–10.)

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  Whether a defendant is personally involved is a question of fact, such that summary judgment cannot be granted on this ground if the personal involvement of a defendant is in dispute.  *See id.*  While "[a] defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983," *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012), personal involvement may still be shown through evidence that "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring," *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

In his opposition, Plaintiff fails to cite to any evidence that Morales, Delbusto, Tegan, and Acosta were personally involved in his strip search, (Pl.'s Opp. 9); therefore, any claims against these Defendants arising from the strip search are dismissed.  Further, based on Plaintiff's deposition testimony and discounting the self-serving, contradictory statements in the Second Amended Complaint filed after Plaintiff's deposition, I find that there is insufficient evidence that Vagnini was present during the strip search, and so I similarly dismiss the unlawful

strip search claim against Vagnini.  However, the record unclear as to whether Williams and Mena were present during the alleged strip search, and so their personal involvement in the matter is a disputed fact.  *Cf. Routier v. O'Hara*, No. 08-CV-02666 (CBA)(LB), 2013 WL 3777100, at *6 (E.D.N.Y. July 17, 2013) (finding neither of the defendants personally involved in the excessive force allegations where neither defendant was present at the time of the alleged incident and the plaintiff himself noted that those defendants were not involved).

Given that Williams and Mena may have been personally involved, such that summary judgment cannot be granted to them based on a lack of personal involvement, I turn next to the substance of Plaintiff's claim with regard to Williams and Mena.  Courts "have specifically and repeatedly recognized the importance of guarding against unreasonable strip searches, in view of the degrading nature of this particular invasion of privacy."  *Sarnicola v. County of Westchester*, 229 F. Supp. 2d 259, 268–69 (S.D.N.Y. 2002).  However, even with respect to alleged unconstitutional strip searches, "[a]n officer is qualifiedly immune from [§] 1983 liability when he performs a discretionary act based on a mistaken but objectively reasonable belief that his conduct is constitutional."  *Quiles v. City of New York*, No. 15 Civ. 1055 (CM), 2016 WL 6084078, at *12 (S.D.N.Y. Oct. 12, 2016).

Courts have long applied a two-pronged inquiry to decide whether qualified immunity applies as a defense, the first being the determination of whether the plaintiff alleges facts sufficient to demonstrate a violation of a constitutional right, and the second being whether the right was clearly established at the time of the alleged misconduct.  *See id.* at *4.  However, district courts are within "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Generally, "[t]he

immunity defense is available so long as reasonably competent officials could disagree about whether the conduct at issue would violate clearly established rights," and, as applied here, summary judgment can only be granted in Movants' favor if "no rational jury could find the searching officer's conduct in performing the strip search unreasonable." *Quiles*, 2016 WL 6084078, at *4, *12.

Whether or not the law governing the legality of Plaintiff's strip search in these circumstances is clearly established can only be considered with reference to the myriad circumstances that have influenced the development of the law in other strip search cases. As the Second Circuit has noted, "[t]he key precedents turn kaleidoscopically on whether the arrest is for a felony or a misdemeanor, and whether the suspect is placed in the general prison population, among other considerations." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013). Parsing through the law, however, renders the determination sufficiently clear in these circumstances that, absent a reasonable suspicion not otherwise shown by the submitted evidence that Plaintiff was carrying drugs or contraband, the strip search of Plaintiff violated his constitutional rights under the Fourth Amendment.

Here, the strip search of Plaintiff was incident to his arrest and later charge for burglary in the third degree, a class "D" felony. *See* N.Y. Penal Law § 140.20. At least with respect to misdemeanor offenses, "the lawfulness of strip searches . . . depends on: the 'reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.'" *Quiles*, 2016 WL 6084078, at *11 (quoting *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008)); *see also Weber v. Dell*, 804 F.2d 796, 801–02 (2d Cir. 1986) (finding that the fact that the defendant was searched in a vacant cell decreased concerns of jailhouse safety). "Whether a

particular strip search is constitutional 'turns on an objective assessment of the facts and circumstances confronting the searching officer at the time, and not on the officer's actual state of mind at the time' of the search." *Quiles*, 2016 WL 6084078, at *11 (quoting *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985)). Moreover, although the Supreme Court has found constitutional blanket policies mandating strip searches of detainees who enter the general population of a jail, *see Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 339 (2012), suspicionless visual body cavity searches at a police station "are still subject to the *Hartline* standard requiring individualized reasonable suspicion," *Quiles*, 2016 WL 6084078, at *10 (quoting *Fate v. Charles*, 24 F. Supp. 3d 337, 352 (S.D.N.Y. 2014)).

Although *Hartline* concerned misdemeanor offenses, other courts in this Circuit have applied the reasonable suspicion standard to arrests for drug-related felonies. *See, e.g.*, *United States v. Gonzalez*, 111 F. Supp. 3d 416, 431 n.13 (S.D.N.Y. 2015) ("Although most of the relevant precedential cases involved misdemeanor arrestees, the same legal standards apply to strip searches of felony arrestees such as Gonzalez."); *Sarnicola*, 229 F. Supp. 2d at 270 ("There would seem to be no constitutional prerogative to strip search individuals in the absence of particularized reasonable suspicion that they are carrying drugs or contraband."). Furthermore, although the Second Circuit held in 2013 that the law was not clearly established with respect to felony *drug* crimes, *see Gonzalez*, 728 F.3d at 161, the Second Circuit has never held, or even suggested, that searches incident to lawful felony arrests for non-drug related charges are presumptively lawful or otherwise would not be subject to the reasonable suspicion standard. Rather, the relevant precedents suggest the opposite conclusion. Indeed, even in *Gonzalez*, the Second Circuit repeatedly emphasized that the heightened concerns that may or may not warrant strip searches appear when individuals are arrested for felony *drug* crimes, as these

circumstances more easily give rise to a presumption that an individual possesses drugs or contraband. *See id.* ("Although we have repeatedly held that the police may not conduct a suspicionless strip or body cavity search of a person arrested for a misdemeanor, reasonable officers could disagree as to whether that rule applied to those arrested for felony *drug* crimes, *given the propensity of drug dealers to conceal contraband in their body cavities* . . . . A reasonable officer who made a study of these ramified precedents could distinguish arrests for offenses such as harassment from arrests for felonies—*especially felonies involving drugs*." (emphasis added)).

Here, Plaintiff was not arrested on any drug-related felony charge, nor is there any evidence to suggest that Williams and Mena, assuming they were involved in the strip search, had a reasonable suspicion that Plaintiff was carrying drugs or contraband on his person. For these reasons, I find that the Movants are not entitled to summary judgment on the unlawful strip search claim brought against Mena and Williams. *See, e.g.*, *Hartline*, 546 F.3d at 103 ("[W]e have also never decided a case suggesting that a strip search on these facts would be constitutionally permissible. Thus, we are comfortable concluding that in the absence of indicia that this Court has found to support individualized reasonable suspicion in the past, a reasonable jury might determine that Defendants were acting in a fashion that clearly violated Hartline's Fourth Amendment rights. Defendants are therefore not entitled to summary judgment on the issue of qualified immunity." (citations omitted)); *Sarnicola*, 229 F. Supp. 2d at 275 (finding that an officer was not entitled to qualified immunity where he ordered a strip search without having any reason to suspect the arrestee was secreting drugs on her person).

## 5. Conspiracy

Movants also seek summary judgment with respect to Plaintiff's conspiracy claim, which he brings under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and New York State law.[14]  Specifically, Plaintiff brings his conspiracy claim against Mena, Williams, and Vagnini for conspiracy to deprive him of his Fourth Amendment rights on August 27, 2012, against Williams and Acosta for conspiracy to deprive him of his Fourth Amendment rights on August 31, 2012, and against all Defendant officers for conspiracy to deprive him of his Fourth, Fifth, and Fourteenth Amendment rights on August 28, 2012 when searching his home and seizing his property.  (SAC ¶¶ 100–03.)  With respect to both the August 27 Arrest and August 31 Arrest, Plaintiff bases his conspiracy claim on overt steps taken to wrongfully arrest him, manufacture evidence against him, and unlawfully seize his property.  (*Id.* ¶¶ 101–02.)  In connection with the August 27 Arrest only, Plaintiff alleges a conspiracy in connection with Mena, Williams, and Vagnini unlawfully searching him and his home, failing to return his seized property, and wrongfully and unreasonably brutalizing him.  (*Id.* ¶ 101.)

As an initial matter, Judge Preska did not grant Plaintiff permission to amend his complaint to detail conspiracy claims.  (*See* Doc. 10.)  Regardless, Plaintiff's claim under § 1985 is easily dispensed with, as § 1985(3) requires that the alleged conspiracy be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)).  Plaintiff's only allegation—let alone evidence—supporting racial animus is that fact that he is a member of a protected class.  This alone is insufficient to support a § 1985 conspiracy claim, and I therefore dismiss this claim.  *See*

---

[14] As addressed *infra*, Plaintiff's state law claims are dismissed on other grounds.

*id.* at 147 (finding summary judgment was warranted because the plaintiff "did not demonstrate that the officers selected their course of action because of his race").

Plaintiff's § 1983 conspiracy claim also fails to survive summary judgment. To state a claim under § 1983 for conspiracy, a plaintiff must show "(1) an agreement between a state actor and a private party [or two or more state actors]; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pacicca v. Stead*, 456 F. App'x 9, 12 (2d Cir. 2011) (quoting *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002)). "To defeat a motion for summary judgment, 'the non-moving party may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Moreover, the plaintiff must prove an "actual violation of constitutional rights"—in other words, "the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Since plaintiff cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy.").

With the exception Plaintiff's Fourth Amendment claim premised on the strip search, none of Plaintiff's § 1983 claims survive summary judgment and, therefore, neither does a conspiracy claim premised on supposed violations of those constitutional rights. Even with respect to Plaintiff's unlawful strip search claim, Plaintiff does not identify any evidence supporting an agreement to inflict an unconstitutional injury. Rather, Plaintiff only alleges that (1) Mena told Yarborough and Vagnini to strip search him; (2) Yarborough then told Plaintiff to remove his clothing; (3) after Plaintiff refused to remove his clothes, Vagnini assaulted him by placing him in a chokehold while Yarborough removed his clothing and jewelry and exposed his

"genitals and rectum for a search;" and (4) neither Mena nor Williams intervened to prevent or stop these actions.  (SAC ¶ 22; *see also* Byrns Decl. Ex. D, at 82:2–6, 93:5–20 (stating only that he was strip-searched while at the precinct).)  In fact, Plaintiff seemingly does not dispute the lack of any conspiratorial agreement to inflict this particular alleged injury, as he states in his opposition only that he "observed defendants agree amongst themselves to falsify arrest reports and affidavits for warrants and illegally break in to my home and car."  (Pl.'s Opp. 14.)  Ultimately, even if I were to credit the allegations in the Second Amended Complaint, the allegations are insufficient to show an agreement and are otherwise conclusory, failing to show a conspiracy.  *See, e.g.*, *Schultz v. Inc. Vill. of Bellport*, No. 08-CV-0930 (JFB)(ETB), 2010 WL 3924751, at *11 (E.D.N.Y. Sept. 30, 2010), *aff'd*, 479 F. App'x 358 (2d Cir. 2012) (holding that evidence that the defendants were discussing the plaintiff's trespass, or otherwise communicating, did not establish an agreement to inflict an unconstitutional injury).  Accordingly, I grant summary judgment to Movants as to Plaintiff's § 1983 and § 1985 conspiracy claims.

### 6.  Plaintiff's State Law Claims

Finally, Plaintiff's state law claims, brought pendent to and based on the same facts as his federal law claims, do not survive summary judgment because, as argued by Movants, Plaintiff did not timely bring his claims within the period allotted by the New York General Municipal Law.  (*See* Defs.' Mem. 21–22.)

New York General Municipal Law provides that "no tort action shall be prosecuted or maintained against a municipality or any of its officers, agents, or employees unless:  (1) a Notice of Claim has been served against the municipality; (2) the municipality has refused adjustment or payment of the claim; and (3) the action is commenced within one year and ninety

days after the event upon which the claim is based occurred." *Dingle v. City of New York*, 728 F. Supp. 2d 332, 348 (S.D.N.Y. 2010) (citing N.Y. Gen. Mun. Law § 50-i); *see also* N.Y. Gen. Mun. Law § 50-k. Section 50-e further provides that a notice of claim must be filed "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50-e(1)(a). Although these notice of claim requirements do not apply to § 1983 claims brought in federal court, they do otherwise apply to state law claims that are brought in federal court as related to § 1983 claims. *See Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 708–09 (S.D.N.Y. 2011). These include state constitutional claims, such as those brought by Plaintiff. *See id.* at 709; *see also Dingle*, 728 F. Supp. 2d at 348 ("[T]he requirements do apply to state law personal injury claims that are brought in federal court.").

Aside from Plaintiff's claim for malicious prosecution of the stolen property charge that followed the August 31 Arrest, Plaintiff's latest accrued claim is for malicious prosecution of burglary in the third degree resulting from his August 27 Arrest, which all parties agree would have accrued on March 13, 2013. (*See* Byrns Decl. Ex. G.) As a result, Plaintiff was required to file a notice of claim by June 11, 2013, which Plaintiff failed to do, instead submitting his notice of intention to file claim on November 2, 2013. (*See* Blue Decl. Ex. G.) However, even were I to ignore this initial failure, Plaintiff also failed to file a lawsuit by June 11, 2014, choosing instead to wait until September 26, 2014 to bring his initial complaint in federal court. (*See* Doc. 1.) Thus, Plaintiff's state law claims premised on false arrest, false imprisonment, malicious prosecution stemming from the August 27 Arrest, excessive force, unconstitutional search and seizure, conversion/replevin, and conspiracy are barred by his failure to file either a timely notice of claim and/or a timely lawsuit against any of the Defendants.[15]

---

[15] I find Plaintiff's argument that he understood that he had one year and ninety days from the date of filing his notice of claim to then file his lawsuit to be unconvincing. (*See* Pl.'s Opp. 17.) The City's November 15, 2013

Finally, Plaintiff's state law malicious prosecution claim stemming from the August 31 Arrest for possession of stolen property and the September 11, 2014 dismissal of the charge is similarly barred because Plaintiff has not asserted, nor is there any evidence supporting, that a notice of claim was *ever* filed. *See Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 428 (S.D.N.Y. 2002) ("Given that [Plaintiff] has never filed a notice of claim against these defendants, his pendent state law claims [for false arrest, false imprisonment, and malicious prosecution] must be dismissed with prejudice."). For these reasons, Plaintiff's pendent state law claims are dismissed.

## 7. Municipal Liability

Claims based upon a violation of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), do not "create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered an infliction of a tort resulting from the policy." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). Therefore, Plaintiff's claim based on municipal liability under *Monell* cannot survive without an underlying constitutional violation. Because Plaintiff's false arrest and imprisonment, excessive force, unlawful search and seizure, malicious prosecution, and conspiracy claims fail, Plaintiff cannot allege a *Monell* claim for those causes of action. *See Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 359 (N.D.N.Y. 2008), *aff'd*, 331 F. App'x 894 (2d Cir. 2009).

For the remaining federal law claim—the alleged unconstitutional strip search—Plaintiff does not allege or otherwise offer any evidence supporting the conclusion that his injury was the result of a municipal policy, custom, or practice. *See Monell*, 436 U.S. at 694; *see also Triano v.*

---

response to Plaintiff's notice of claim, attached to Plaintiff's declaration, clearly stated in bold typeface that "**any lawsuit against the City must be started within one year and ninety days from the date of occurrence.**" (Blue Decl. Ex. G (emphasis in original).)

*Town of Harrison*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) ("[T]here must be a 'direct causal

link between a municipal policy or custom and the alleged constitutional deprivation.'" (quoting

*City of Canton v. Harris*, 489 U.S. 378, 385 (1989))). Plaintiff's citation to *Floyd v. City of New

York*, 959 F. Supp. 2d 540 (S.D.N.Y. 2013), (*see* Pl.'s Opp. 19), is inapposite and unpersuasive,

as that case involved entirely different factual circumstances including, notably, 4.4 million stop

and frisks made by the New York Police Department in the course of over eight years. As a

result, Plaintiff's *Monell* claims against the City are dismissed.

## VI.    Conclusion

For the foregoing reasons, Movants' motion for summary judgment is GRANTED IN

PART and DENIED IN PART. Movants' motion for summary judgment is DENIED as to the

§ 1983 claims brought against Mena and Williams based on the strip search, but is GRANTED

as to the remainder of Plaintiff's claims. The Clerk of Court is respectfully directed to mail a

copy of this Opinion and Order to the pro se Plaintiff and terminate the open motion. (Doc. 67).

The parties are directed to appear for a post-discovery conference on March 23, 2018 at

11:00 a.m. in Courtroom 518 of the Thurgood Marshall United States Courthouse, 40 Foley

Square, New York, New York. In connection with this conference, the parties should be

prepared to discuss the anticipated length of trial and potential trial dates.

SO ORDERED.

Dated:  March 1, 2018
        New York, New York

Vernon S. Broderick
United States District Judge